# CIRCUIT COURT OF FAIRFAX COUNTY

EER Systems Corp.

v.

Armfield, Harrison & Thomas, Inc.,
and Tri-City Insurance Brokers, Inc.

Case No. (Law) 178727

BY JUDGE JANE MARUM ROUSH

November 4, 1999

This case is before the court on the Defendants' Motion to Compel and on the Plaintiff's Motion for Protective Order. The Court has fully considered the matter, including the parties' pleadings and their points and authorities. For the reasons set forth below, the Defendants' Motion to Compel is granted, and the Plaintiff's Motion for Protective Order is denied.

The fact that AH&T's and Tri-City's Motion to Dismiss remains under advisement does not affect the scope of discovery. Thus, AH&T is permitted to continue the deposition of Mr. Shaughnessy and shall do so without a presiding magistrate. This Court has instructed counsel as to the proper form of objection at deposition and expects the parties to adhere to those instructions.

This Court entered an order on August 16, 1999, permitting the deposition of Dr. Jai Gupta. The order set forth this Court's "ground rules" for taking his

deposition. His testimony need not be limited, given his knowledge of relevant events and transactions.

The deposition of Messrs. Pawlick and Garrison are not wasteful and burdensome. These witnesses have knowledge of the CSTAR contract, the Thiokol contract, and the insurance policy that is at issue in this case. This Court's granting EER's Motion to Dismiss AH&T's Amended Counterclaim does not negate Defendants' need to depose these witnesses.

An appropriate order has been entered by the Court.

### December 31, 1999

This matter came on for hearing on September 3, October 1, and December 10, 1999, on various motions filed by the parties. Several of the motions were ruled on from the bench, and appropriate orders have been entered reflecting those rulings. The following motions were taken under advisement:

AH&T's Motion to Dismiss Amended Motion for Judgment;

AH&T's Renewed Motion to Dismiss and Tri-City's Joinder in the Motion to Dismiss;

AH&T's Plea of the Statute of Limitations;

Tri-City's Plea of the Statute of Limitations;

AH&T's Demurrer to Amended Motion for Judgment;

Tri-City's Demurrer to Amended Motion for Judgment;

AH&T's Motion in Limine to Exclude All Evidence of EER's Damages and Tri-City's Joinder in that Motion.

The Court has now had the opportunity to consider fully the arguments and briefs of counsel. For the following reasons, the Court will enter an order ruling on the pending motions as follows:

AH&T's and Tri-City's Motion to Dismiss Amended Motion for Judgment (as renewed) is granted;

AH&T's and Tri-City's Demurrers to Amended Motion for Judgment are sustained in part and overruled in part;

AH&T's and Tri-City's Pleas of the Statute of Limitations are sustained in part (as to Counts III and IV) and overruled in part (as to Counts II, VI, VII, VIII, and IX);

AH&T's Motion to Exclude All Evidence of EER's Damages and Tri-City's Joinder in that Motion are granted in part.

*Facts*

The facts of this case alleged in the Amended Motion for Judgment are as follows. The plaintiff, EER Systems, Inc. ("EER"), entered into an agreement with the University of Tennessee-Calspan Center for Space Transportation and Applied Research ("CSTAR") to provide launch services for a NASA-funded program to develop a vehicle known as a Commercial Experiment Transporter ("COMET"). Amended Motion for Judgment ¶ 6.[1] In turn, EER entered into two contracts in 1993 with Thiokol Corporation ("Thiokol") whereby Thiokol would provide EER with rocket motors and related services for use in connection with the COMET program. ¶ 7. EER agreed to pay Thiokol in increments for some of Thiokol's non-recurring costs of developing the rocket motors. ¶ 8.

In 1992, prior to signing the contracts with Thiokol, EER asked defendant Armfield, Harrison & Thomas, Inc., ("AH&T") to act as EER's insurance broker and procure an insurance policy. ¶ 9. EER told AH&T that it wanted a policy that would fully protect EER from contractual liability to Thiokol in the event funds were no longer available to EER from its customers under the COMET program. In addition, EER told AH&T that the policy must provide that the insurer would have no right to recover from EER if the insurer were called upon to pay Thiokol pursuant to the policy. In other words, the policy must contain a waiver of subrogation. ¶ 10. AH&T agreed to act as EER's broker in obtaining such a policy for EER. ¶ 11.

AH&T then asked defendant Tri-City Insurance Brokers, Inc., ("Tri-City") to act as the agent and insurance broker for the EER policy. ¶ 13. Tri-City agreed to act as an agent and broker for an insurance policy that would meet EER's specific needs. ¶ 14. Tri-City then contacted The Fenchurch Group ("Fenchurch"), a London-based broker for Lloyd's of London ("Underwriters"), to obtain insurance for EER. ¶ 16.

On July 2, 1993, Underwriters issued an insurance policy naming Thiokol as the assured party. ¶ 18. In response to an interrogatory, EER admits that it received the final policy in December 1993. Contrary to EER's instructions, the event triggering coverage under the policy was if EER could not pay Thiokol "solely in the event of the cancellation or termination of the COMET project by NASA during the policy period." *Id.* Also contrary to EER's instructions, the final policy included subrogation rights in favor of

---

[1] Unless otherwise indicated, all further paragraph references are to the numbered paragraphs of the Amended Motion for Judgment.

Underwriters. ¶ 19. Tri-City represented to AH&T, and AH&T represented to EER, that the coverage EER desired was contained in the policy. ¶¶ 20-22.

On January 12, 1993, AH&T met with EER in order to present to EER the policy and obtain EER's agreement to purchase the policy. ¶ 23. At the time of that meeting, AH&T, Tri-City, and Fenchurch believed the policy to be insufficient for EER's needs in that the draft policy contained subrogation rights in favor of Underwriters and the event triggering coverage was too narrowly drawn. ¶ 24. Employees of AH&T, Tri-City, and Fenchurch agreed and conspired to conceal from EER the defects in the policy. ¶¶ 25-30.

EER paid a premium for the policy of $315,000.00 to Underwriters, from which AH&T and Tri-City received commissions. ¶ 31. The policy was effective from March 12, 1993, through March 11, 1995. ¶ 34.

In May 1994, during the policy period, NASA terminated funding for the COMET program. CSTAR terminated its contract with EER. Therefore, funding was no longer available to EER from its customer under the COMET program. ¶ 36. Thiokol filed a claim with Underwriters, which initially was denied. ¶¶ 37, 38.

In December 1994, Thiokol sued EER in the United States District Court for the Eastern District of Virginia (the "Virginia Federal Litigation") to recover the sums due under their contracts. The Virginia Federal Litigation was dismissed without prejudice in May 1995. In connection with the dismissal of the Virginia Federal Litigation, EER and Thiokol stipulated that Thiokol contended that additional sums are due from EER related to Thiokol's non-recurring development costs and that Thiokol preserved all its claims related to those costs. EER incurred substantial legal fees in defending against Thiokol's claim in the Virginia Federal Litigation. ¶¶ 40-47.

Thiokol filed suit against Underwriters in the United States District Court for the Northern District of Utah (the "Utah Litigation"). The Utah Litigation was resolved by Underwriters paying Thiokol $3,000,000.00. As part of the settlement, Thiokol agreed to cooperate with Underwriters in pursuing Underwriter's rights against EER. ¶ 49.

Meanwhile, EER filed its Motion for Judgment in this Court on March 12, 1996, in a predecessor case to this case styled as *EER Systems Corp. v. Armfield, Harrison & Thomas, et al.*, Law No. 150567. ¶ 48. After this Court dismissed with prejudice several of the counts of the motion for judgment in the prior litigation, EER nonsuited the remaining counts on April 9, 1999. EER appealed the dismissal with prejudice of some of the counts in the prior litigation in this Court (Law No. 150567). The Virginia Supreme Court denied a writ in that case on November 3, 1999. EER filed this present suit on March 8, 1999. The Amended Motion for Judgment was filed on April 23, 1999.

While the predecessor suit in this Court was pending, on October 29, 1996, Underwriters, through counsel, demanded that EER reimburse Underwriters for the $3,000,000.00 Underwriters paid to Thiokol to settle the Utah Litigation. ¶ 50.

The Amended Motion for Judgment contains the following counts:

Count I: Breach of Contract (AH&T)
Count II: Negligence (AH&T)
Count III: Statutory Conspiracy (AH&T and Tri-City)
Count IV: Common Law Conspiracy (AH&T and Tri-City)
Count V: Restitution/Unjust Enrichment/Quasi Contract (AH&T)
Count VI: Breach of Contract (Tri-City)
Count VII: Breach of Third Party Beneficiary Contract (Tri-City)
Count VIII: Negligence (Tri-City)
Count IX: Restitution/Unjust Enrichment/Quasi Contract (Tri-City).[2]

## I.

### AH&T's Motion to Dismiss Amended Motion for Judgment, AH&T's Renewed Motion to Dismiss, and Tri-City's Joinder in the Motion to Dismiss

AH&T filed its Motion to Dismiss EER's Amended Motion for Judgment on August 20, 1999, and renewed its motion, alleging additional grounds in support of the motion, on October 22, 1999, and November 24, 1999. Tri-City joined in the renewed motions to dismiss. (AH&T's motions to dismiss and Tri-City's joinders therein will be referred to collectively as the "Motion to Dismiss.")

The Motion to Dismiss was brought under Rule 4:12 of the Rules of the Supreme Court of Virginia. That Rule authorizes the court to impose a wide array of sanctions for a party's failure to obey a court order to provide or permit discovery, including dismissal of the action.

The Court notes by way of background that discovery has been a continuing problem, both in this case, and in its predecessor case in this Court. In the predecessor case, in response to continuing discovery disputes, the Court entered an order setting forth the ground rules by which depositions would be taken. *See* Order dated January 11, 1999, in Law No. 150567. That

---

[2] Count IX is mis-numbered in the amended Motion for Judgment as Count XIII.

order, as an order governing discovery, was incorporated into this case by Order dated May 7, 1999. That order provided, among other things, that counsel must not interrupt a witness unless the witness's answer is clearly non-responsive, argue with a witness, or comment on opposing counsel's objections. By order dated August 16, 1999, the Court directed that no witness should be instructed not to answer a question unless the answer involved privileged matters, and, in that event, the basis of the privilege should be stated on the record. In addition, the record in this case and the predecessor case is replete with instances of the Court's admonitions, exhortations, and entreaties to the litigants and their counsel to cease the constant discovery disputes and cooperate in discovery with a goal of either settling the case or proceeding in an orderly manner to trial.

The Motion to Dismiss alleges that:

1. EER interfered with AH&T's deposition of a witness, Coleman Shaughnessy, "to such a degree that the record is irreparably tainted." At the resumed deposition of Coleman Shaughnessy, the deponent refused to answer questions posed by counsel for AH&T;

2. EER apparently altered documents related to EER's claimed damages;

3. EER apparently destroyed, during the course of this litigation, pertinent, discoverable documents.

4. EER has refused to permit the unfettered deposition of Dr. Jai Gupta, despite an Order permitting such a deposition. EER's counsel disrupted the resumed deposition of Dr. Gupta, despite a Court order permitting the deposition to continue without restriction as to subject matter;

5. EER has refused to permit AH&T to depose Dr. Joseph Garrison and Mr. George Pawlick, representatives of CSTAR.

The Court will consider separately each of the grounds alleged in support of the Motion to Dismiss.

## 1. The Deposition of Coleman Shaughnessy

Coleman Shaughnessy is the Director of Contracts of EER. AH&T alleges that during its deposition of Mr. Shaughnessy, EER's counsel "impermissibly coached the witness and interfered with the examination to such a degree that the record is irreparably tainted and further meaningful testimony from Mr. Shaughnessy is now impossible." The alleged misconduct occurred with respect to two substantive areas AH&T believes to be critical: (1) the dates EER contacted AH&T and raised its concerns about the adequacy of the subrogation language in the policy and (2) EER's claimed damages.

In the Amended Motion for Judgment, in support of its conspiracy claims, EER alleges that its attorneys raised concerns about the adequacy of the subrogation language in the policy in November 1994. EER then raised the issue with AH&T. Thereafter, EER alleges, AH&T "secretly" wrote a letter to Tri-City seeking to have the policy amended to include a waiver of subrogation provision. EER further alleges that AH&T deliberately did not notify EER of this letter in order to conceal AH&T's knowledge that the policy was defective. Amended Motion for Judgment ¶ 29(a).

In his deposition, Mr. Shaughnessy testified that contrary to the allegations of ¶ 29(a) of the Amended Motion for Judgment, the "secret" letter, dated December 1, 1994, was written *before* EER brought the subrogation issue to AH&T's attention. Shaughnessy Deposition, 8/11/99, p. 114. Mr. Shaughnessy testified that EER raised the subrogation issue with AH&T as soon as EER's counsel alerted EER to the possible deficiencies in the subrogation language. He testified that these events happened *after* the "secret" letter of December 1, 1994. AH&T maintains that the December 1, 1994, letter was written at EER's request *after* EER brought the subrogation issue to AH&T's attention.

AH&T's counsel attempted to impeach Mr. Shaughnessy on his testimony that he first raised the subrogation issue with AH&T after December 1, 1994. AH&T's counsel began to show Mr. Shaughnessy copies of EER's attorney's fees statements for the month of November 1994 that indicated that EER's counsel discussed the subrogation issue with EER in October 1994. EER's counsel then objected to the witness being questioned about the legal bills because the bills did not contain bates numbers and, later, because the bills for December 1994 were not shown to the witness. EER's counsel, Mr. Marino, stated in the presence of the witness:

> Mr. Marino: And I know exactly what you're trying to do. You're giving the witness November and you're giving him January and you're skipping December, which is a critical month.
>
> Mr. Palais: Are you done?
>
> Mr. Marino: I'm asking you if you have the December bill. Are you saying you did not receive — the witness is not going to answer a question.

Shaughnessy Deposition, 8/12/99, p. 26.

Mr. Palais, counsel for AH&T, stated his intention to call the Court to seek a ruling from the Court on the dispute. Mr. Marino then stopped the deposition. The record reflects that Mr. Marino and Mr. Shaughnessy left the room. Several minutes later, Mr. Marino returned to the room and announced that he was prepared to resume with the deposition. AH&T argues that the only reasonable interpretation of what occurred while Mr. Marino and Mr. Shaughnessy were out of the room is that Mr. Marino coached the witness on how to answer the pending questions. AH&T declined the offer to resume the deposition.

According to AH&T, "Mr. Marino disrupted and terminated the deposition by means of a ruse … In fact, the December legal fee statements were never produced by EER with or without bates numbers." AH&T argues that Mr. Marino impermissibly signaled the witness to refer to the December legal bills and that December was the "critical" time period.

AH&T also complains that when its counsel tried to question Mr. Shaughnessy about the factual basis of EER's damage claims, Mr. Marino repeatedly answered the questions for Mr. Shaughnessy and stated that EER's experts will testify about EER's damages. Shaughnessy Deposition, 8/11/99, pp. 149-55.

Mr. Marino wrote AH&T's counsel on October 20, 1999, and stated that the deposition of Mr. Shaughnessy should not resume as long as this Court had under advisement AH&T's motion to dismiss the Amended Motion for Judgment.

On November 4, 1999, this Court denied EER's motion for a stay of discovery, granted AH&T's motion to compel, and ordered the deposition of Mr. Shaughnessy to resume. At his resumed deposition on November 18, 1999, Mr. Shaughnessy refused to answer a question posed by counsel for AH&T. EER's counsel did nothing to encourage his client to cooperate and answer the question, which is no way was objectionable. Counsel for AH&T then stopped the deposition.

In response to the Motion to Dismiss, EER states that there is "no evidence" that EER's counsel impermissibly coached Mr. Shaughnessy after leaving the August 12, 1999, deposition. Counsel for EER maintains he acted perfectly reasonably in suspending the deposition until a legitimate dispute about the completeness of the legal bills could be resolved. Counsel also argues that he reasonably attempted to maintain the "proper scope" of Mr. Shaughnessy's deposition when he interjected that the testimony about EER's damages would have to come from EER's expert, not Mr. Shaughnessy. EER argues that Mr. Shaughnessy was entitled to refuse to comply with AH&T's

request at his November 18, 1999, deposition that he read into the record his handwritten note, which request amounted to "harassment of a witness."

## 2. EER's Alleged Alteration of Documents

After the aborted deposition of Mr. Shaughnessy in August 1999, AH&T compared the bates stamped copies of legal fees statements to the non-bates stamped copies of the same documents and discovered that the bates numbered documents contain alterations and are missing pages. In addition, AH&T contends, there are material differences between the two versions of the documents.

In November 1999, shortly before AH&T attempted to take EER's corporate depositions, EER delivered to AH&T's counsel an "expert package" detailing EER's claimed damages. That package contained legal fees statements different from the two prior sets of the same documents that EER has produced in this litigation.

EER responds that the alteration of the legal bills was minimal. Although the legal bills in question date from 1994 and 1995, EER states that they are a "work in progress" as EER continues to review the bills and delete from the bills legal fees unrelated to the Virginia Federal Litigation.

## 3. EER's Alleged Destruction of Documents

In response to an interrogatory, EER has identified 19 meetings and conversations it has had with Underwriters, all of which occurred after the original motion for judgment was filed in this case in 1996. In response to a question posed to Mr. Shaughnessy in his deposition. EER's counsel Mr. Marino stated that the dates and times of the contracts with Underwriters were recreated from legal bills. When Mr. Shaughnessy was asked if Mr. Marino took notes at any of the meetings with Underwriters, Mr. Marino responded: "I'm not saying I didn't take any notes. We don't have any." Shaughnessy Deposition, 8/11/99, p. 134. Mr. Marino later conceded that he may have taken notes that no longer exist.

AH&T argues that it is apparent that notes were taken of Underwriter's contacts with EER and that those notes were either lost or destroyed. According to AH&T, "[t]hese events all took place during the pendency of this litigation and have eliminated the defendants' ability to independently test the accuracy of EER's general statements about the content of EER's contacts with Underwriters."

EER's communications with Underwriters are not an insignificant issue in this case. AH&T contends that Underwriters has never in fact demanded payment from EER pursuant to the subrogation language of the policy. AH&T maintains that Underwriters made a pro forma demand for payment, possibly at EER's request, solely to defeat AH&T's claim that EER has suffered no damages because Underwriters has never exercised its subrogation rights against EER and has no *bona fide* intention of ever doing so.

In its written opposition to AH&T's motion to dismiss, EER did not respond to AH&T's allegations that notes of EER's contacts with Underwriters have been destroyed during the pendency of this litigation. In the predecessor litigation, EER denied any impropriety in the loss or destruction of notes from a meeting between EER and AH&T referenced in ¶ 29(c) of the Amended Motion for Judgment. Tr. of 4/9/99 hearing.

### 4. *The Deposition of Dr. Jai Gupta*

Dr. Jai Gupta is the President and Chief Executive Officer of EER. Initially, EER's counsel stated that he would neither make Dr. Gupta available for a deposition nor would he cooperate in establishing mutually agreeable dates for the deposition. Later, EER took the position that AH&T should only be permitted to take a "limited deposition" of Dr. Gupta. On August 16, 1999, this Court entered an order permitting AH&T to take Dr. Gupta's deposition. No limitations were placed on Dr. Gupta's deposition other than that the deposition was not to exceed one business day. Despite this order, EER's counsel wrote AH&T's counsel on October 20, 1999, stating that EER was not agreeable to AH&T's taking Dr. Gupta's deposition unless "only matters relating to the transaction in this case will be covered."

AH&T moved to compel Dr. Gupta's deposition and EER moved for a protective order to limit Dr. Gupta's deposition. On November 4, 1999, this Court denied EER's motion for a protective order, granted AH&T's motion to compel, and ordered that Dr. Gupta's deposition proceed. The Court awarded AH&T $500.00 in attorney's fees for having to bring a motion to compel the deposition of Dr. Gupta.

When Dr. Gupta's deposition was taken on November 19, 1999, a dispute arose between counsel when AH&T attempted to ask Dr. Gupta about prior litigation between EER and the United States Department of Justice. Mr. Marino asked Mr. Palais how the question was relevant to the present case. Mr. Palais refused to disclose his trial strategy. While a question was pending, Mr. Marino walked out of the deposition with Dr. Gupta.

EER responds that AH&T's questions to Dr. Gupta were not relevant or calculated to lead to the discovery of admissible evidence and were "tantamount to harassment." Counsel argues that it was not improper for him to discuss with Dr. Gupta the options available to EER "under the circumstances of AH&T's impropriety."

## 5. *The Depositions of Dr. Garrison and Mr. Pawlick*

AH&T attempted to schedule agreeable dates with counsel for EER for the depositions of Dr. George Garrison and Mr. James Pawlick, two senior employees of CSTAR. EER's counsel wrote AH&T's counsel on October 20, 1999, stating that the depositions of the two witnesses were "utterly unnecessary."

EER moved for a protective order to prohibit the depositions of these two witnesses, stating that the testimony would be "extremely wasteful and an undue burden and expense for EER." EER further complained that "AH&T has been unwilling to proffer what they hope to gain by taking such depositions." EER's motion for a protective order was denied, and the parties were directed to cooperate to conclude the depositions by January 7, 2000.

AH&T contends that EER's continued obstruction of discovery, as evidenced by EER's counsel's letter of October 20, 1999, provides an independent basis for this Court to dismiss EER's Amended Motion for Judgment. In that there was no order compelling the depositions of Garrison and Pawlick, EER's refusal to cooperate in selecting dates for the deposition is *not* a basis to dismiss the case under Rule 4:12. Nevertheless, it should not be necessary for a motion to compel, met by a cross motion for a protective order, to precede routine depositions.

Of all the bases alleged in support of the Motion to Dismiss, this Court is most troubled about the conduct of the Shaughnessy and Gupta depositions. It is quite clear to the Court that counsel for EER refused to comply with this Court's orders and directions regarding the proper conduct of a deposition. Counsel has been previously admonished not to make "speaking objections" that signal a witness how to answer a question,[3] or to direct a witness not to answer a question that does not involve privileged matter. *See* Order dated August 16, 1999. The Court's orders and admonishments have gone unheeded by EER. Although Mr. Marino did not instruct Mr. Shaughnessy or Dr. Gupta not to answer a question, his disruptions of the depositions, culminating in each instance with him leaving the room with the witness, is tantamount to an

---

[3] Tr. of 2/12/99 hearing at p. 22.

instruction to the witness not to answer a question. His objection to the legal bills at the Shaughnessy deposition can only be interpreted as a speaking objection calculated to signal the witness to focus on the "critical" December time period. The Court shares AH&T's suspicions that Mr. Marino's willingness to resume the deposition shortly after walking out with the witness can only be explained because the witness was coached how to answer the critical questions. The Court concludes that Mr. Marino's dispute about the completeness of the legal bills was not *bona fide*. A fair reading of the transcript of the Shaughnessy deposition shows that there was nothing improper about AH&T's counsel showing the witness an excerpt of a legal bill, even a single entry in a legal bill, that might call into question the witness' recollection of when he first discussed the subrogation issue with his counsel. The Court agrees with AH&T that the testimony of Mr. Shaughnessy is irrevocably tainted by counsel's conduct during the deposition.

More significantly, EER, who is the plaintiff in this action and who submitted itself to the jurisdiction of this Court, has consistently and vigorously resisted AH&T's taking the deposition of Dr. Gupta. This Court has previously ordered that the only restriction to be placed on the Gupta deposition would be one of time, not subject matter. *See* Order dated August 16, 1999. Despite this order, EER's counsel refused to schedule the deposition without an agreement limiting the subject matter of the deposition. The Court denied EER's motion for a protective order seeking to limit the subject matter of the Gupta deposition. *See* Order dated November 4, 1999. Yet, in spite of this extreme level of judicial oversight of all aspects of discovery in this case, including the Gupta deposition in particular, the deposition was terminated by yet another squabble orchestrated by EER's counsel.

This Court has tried less drastic means to ensure compliance with the Rules of the Supreme Court of Virginia and this Court's orders, such as orders compelling depositions and monetary sanctions. *See* the Court's Order of November 4, 1999, awarding AH&T $500.00 in attorney's fees for having to bring a motion to compel the deposition of Dr. Gupta. Monetary sanctions appear to have had no impact. The Court notes that the disruption of the Gupta deposition occurred *after* the Court compelled the deposition to proceed and awarded monetary sanctions against EER for continuing to resist the deposition. Furthermore, the Gupta deposition was disrupted while this Court had under advisement the Motion to Dismiss based on similar conduct by EER and its counsel in prior depositions. One (heretofore unexpressed) rationale for the Court taking the Motion to Dismiss under advisement in September 1999 was to encourage counsel to comply with the discovery rules and the Orders of this Court as discovery entered a critical phase.

Rule 4:12 permits a broad range of remedies for a party's disobedience, including issue preclusion and dismissal of the action. The issue for the Court is therefore what is the appropriate remedy for EER's continued violations of the Court's discovery orders? Ordinarily, if a witness refuses to cooperate in a deposition, the Court would consider prohibiting the witness's testimony on the subject matter of the deposition. Mr. Shaughnessy and Dr. Gupta, however, are not insignificant witnesses in this case asked to testify about one or two discrete issues. Mr. Shaughnessy was, at the time of the procurement of the insurance policy in question, the Director of Contracts of EER. He is a key witness on all aspects of this case. Dr. Gupta is EER's president and chief executive officer. The Court concludes that the only appropriate remedy for the egregious discovery abuses in this case is to grant AH&T and Tri-City's motion to dismiss the Amended Motion for Judgment.

## II.

*AH&T's Plea of the Statute of Limitations*
*Tri-City's Plea of the Statute of Limitations*

### 1. *Counts III and IV*

AH&T and Tri-City filed pleas in bar, alleging that Counts III and IV of the Amended Motion for Judgment (statutory conspiracy and common law conspiracy) are time-barred.

The statutory conspiracy count is based on Va. Code Ann. §§ 18.2-499 and 18.2-500. One federal court has held that a five-year limitations period applies to actions under those Code sections. *Federated Graphics Co. v. Napotnick*, 424 F. Supp. 291 (E.D. Va. 1976). EER's cause of action accrued, at the latest, in December 1993 when EER admits it received the policy. Upon receipt of the final policy, through the exercise of due diligence, EER reasonably should have discovered that the policy did not meet its specifications, the basis of its conspiracy claims.[4] As March 8, 1999,[5] is more than five years after December 1993, the statutory conspiracy count is time-barred.

---

[4] The final policy contains an unambiguous subrogation clause. Amended Motion for Judgment ¶ 19.

[5] The conspiracy counts were not part of the predecessor litigation in this Court that was nonsuited on April 9, 1999.

The common law conspiracy count is governed by either the one-year "catch all" statute of limitations in Code § 8.01-248 (since enlarged to two years for actions accruing on or after July 1, 1995, or, at best, the two-year statute of limitations for personal injury actions, Code § 8.01-243(A). In either event, that count is time-barred.

The pleas in bar as to Counts III and IV are sustained.

## 2. *Counts II and VIII*

AH&T and Tri-City filed pleas in bar, alleging that Counts II and VIII of the Amended Motion for Judgment (alleging negligence) are time-barred.

Counts II and VIII allege, in essence, professional malpractice. In this case, AH&T's and Tri-City's agreement to procure an insurance policy for EER was not in writing. Therefore, EER's causes of action for professional malpractice are governed by the three-year statute of limitations for an oral contract. *Harris v. K & K Ins. Agency*, 249 Va. 157 (1995). "[A]s a general rule, the statute of limitations begins to run against a cause of action at the time of its accrual." *Id.* at 161. The Virginia Supreme Court has held that the statute of limitations for the claim of negligence in procuring an insurance contract accrues when the broker last assists the insured in procuring the coverage. *Harris v. K & K Insurance Agency, supra; Goodell v. Rehrig Int'l, Inc.*, 683 F. Supp. 1051 (E.D. Va. 1988), aff'd 865 F.2d 1257 (4th Cir. 1989). Tri-City claims that it last assisted in procuring this insurance on March 4, 1993, when it telecopied the proposed policy reviewed by AH&T to Fenchurch. EER has produced evidence that Tri-City and AH&T continued to endeavor to procure the insurance after March 1993. *See, e.g.*, Fenchurch's letter of March 12, 1993, to Tri-City and Tri-City's August 4, 1993, letter to Fenchurch. Therefore, these counts are not barred as they were filed (in the predecessor lawsuit) less than three years after Tri-City and AH&T last assisted in the procurement of the policy.

The plea in bar to Counts II and VIII will be overruled.

## 3. *Counts VI and VII*

Tri-City argues that Counts VI and VII (alleging breach of contract and breach of third-party beneficiary contract) are time-barred. A three-year statute of limitations applies to those counts. For the reasons stated above in ruling on the pleas in bar to Counts II and VIII, the Court finds that Counts VI and VII are not time-barred.

Tri-City's plea in bar to Counts VI and VII will be overruled.

## 4. *Count IX*

Tri-City argues that Count IX, entitled "Restitution/Unjust Enrichment/Quasi Contract" is time-barred.

The Court concludes that Count IX is not time-barred. The Virginia Supreme Court has held that the three-year statute of limitations for oral contracts is applicable to claims of unjust enrichment. *Belcher v. Kirkwood*, 238 Va. 430, 433 (1989). In that case, the Court held that equity follows the law, and, therefore, the three-year statute of limitations applicable to oral contract actions was also applicable to unjust enrichment actions. In this case, the unjust enrichment occurred, if at all, when the $315,000.00 premium was paid in July 1993. The original Motion for Judgment, filed on March 12, 1996, was therefore timely as to the claims contained in Count IX of the Amended Motion for Judgment.

The plea in bar to Count IX will be overruled.

### III.

### *AH&T's Demurrer to Amended Motion for Judgment*
### *Tri-City's Demurrer to Amended Motion for Judgment*

AH&T and Tri-City filed a demurrer to EER's Amended Motion for Judgment on the following bases:

1. The Amended Motion for Judgment does not contain an *ad damnum* requesting a specific amount of monetary damages;

2. EER does not allege that Underwriters' right of subrogation against EER has ever been adjudicated;

3. EER was contributorily negligent as a matter of law;

4. EER has not alleged any damages proximately caused by AH&T or Tri-City;

5. The conspiracy counts of the Amended Motion for Judgment fail to allege sufficient facts upon which relief can be granted;

6. Count V of the Amended Motion for Judgment (Restitution/Unjust Enrichment/Quasi-Contract) fails to state a claim upon which relief can be granted;

7. The Amended Judgment fails to allege facts on which punitive damages may be awarded;

8. EER has failed to allege sufficient facts to support a claim against Tri-City.

The Court will consider separately each of the bases alleged in support of the defendants' demurrers.

## 1. *Lack of an Ad Damnum*

In its prayer for relief in Counts I, II, VI, VII, VIII, and IX, EER requests the following damages:

> Awarding EER the amounts which Underwriters are entitled to recover from EER and the reasonable attorney's fees and costs EER incurred in connection with [the Virginia Federal Litigation].

In its prayer for relief in Count VI, EER requests the following damages:

> Ordering that AH&T pay any amounts [to] EER which Underwriters are entitled to recover from EER; that AH&T be required to return to EER the amounts it was paid as commissions from January 12, 1993, to the present, plus legal interest; and that AH&T pay an amount equal to the reasonable attorney's fees and costs EER incurred in connection with [the Virginia Federal Litigation].

In Virginia, contrary to Federal practice, the motion for judgment must contain an *ad damnum* that quantifies the monetary damages sought. This is because the *ad damnum* sets a cap on the amount recoverable by the plaintiff. *Powell v. Sears and Roebuck*, 231 Va. 464, 344 S.E.2d 916 (1986). As one commentator succinctly noted: "A defendant is entitled to notice of the size and amount of the claim against her as she is entitled to notice of its nature." John L. Costello, *Virginia Remedies*, § 6-3(c)(5) (1997).

The Court sustains the demurrer to the Amended Motion for Judgment for failure to mention a specific amount sought in the *ad damnum*.

## 2. *Failure to Allege Adjudication of Underwriter's Rights of Subrogation*

The defendants argue that the lack of an *ad damnum* in the Amended Motion for Judgment underlines a more fundamental flaw in EER's case; to date, EER has paid Underwriters nothing pursuant to the subrogation provision of the insurance policy. The defendants claim that any amounts that EER might be called upon to pay Underwriters at some later date is speculative at best. AH&T and Tri-City contend that EER must allege and

prove that Underwriters' right of subrogation against EER has been adjudicated.

The Court concludes the Amended Motion for Judgment is not demurrable because it fails to allege that Underwriters' subrogation rights have been adjudicated. That is not an indispensable allegation at the pleadings stage. Whether EER has incurred any damages as a result of the defendants' actions is an issue for proof at trial.

### 3. EER's Contributory Negligence

Both Tri-City and EER demur to the negligence and breach of contract counts (Counts I, II, VI, VII, and VIII) of the Amended Motion for Judgment on the basis that EER was contributorily negligent as a matter of law because it did not read the insurance policy when Mr. Shaughnessy signed the policy on behalf of EER in April 1993 or when EER received the final policy in December 1993.

Defendants rely on *General Insurance of Roanoke v. Page*, 250 Va. 409 (1995). In that case, the Virginia Supreme Court held that a policy holder has an affirmative duty to read the policy, and failure to do so constitutes negligence as a matter of law that bars a recovery against the agent. 250 Va. at 412. Defendants further argue that if EER did read the policy, it was contributorily negligent as a matter of law for not noticing the deficiencies it now claims in the subrogation provision and coverage triggers.

The Court concludes that whether EER was contributorily negligent in failing to read the policy or in reading the policy and not noting its deficiencies is an issue for trial and is not reachable by demurrer. Therefore, the demurrer based on *General Insurance of Roanoke v. Page* will be overruled, without prejudice to being renewed at trial after presentation of evidence.

### 4. Failure to Allege Damages Proximately Caused by Defendants

Part of EER's claimed damages are the attorney's fees EER incurred in the Virginia Federal Litigation. AH&T and Tri-City argue that a review of the complaint in that case, which became part of the pleadings in this case by means of an order granting oyer, shows that Thiokol sued EER for far more than its non-recurring development costs. Therefore, according to the defendants, EER's attorney's fees incurred in the Virginia Federal Litigation are not a proper element of damage in this case.

The Court agrees with the general proposition that EER will only be allowed to recover for that portion of its attorney's fees incurred in the

Virginia Federal Litigation attributable to the non-recurring development costs intended to be covered by the policy. EER will not be allowed to recover any attorney's fees attributable to other disputes between Thiokol and EER unrelated to the policy.

The Court concludes that what portion, if any, of EER's attorney's fees incurred in the Virginia Federal Litigation is a proper element of EER's damages in this case is an issue of proof for trial and is not reachable by demurrer.

### 5. *Insufficient Facts Alleged to Support Conspiracy Counts*

The Court believes that the conspiracy counts, although dismissed as time-barred, were adequately pleaded. Whether AH&T, Tri-City, and Fenchurch acted with the intent to damage EER in its business or trade is an issue of proof for trial. The allegation of ¶ 28 of the Amended Motion for Judgment that such was their intent is sufficient to withstand demurrer. The demurrer to those counts will be overruled.

### 6. *Failure to State a Claim in Counts V and IX (Restitution/Unjust Enrichment/Quasi-Contract)*

AH&T and Tri-City demur to Counts V and IX (alleging a cause or causes of action for "Restitution/Unjust Enrichment/Quasi-Contract") on the basis that EER cannot simultaneously seek a refund of the premium paid under the policy and enjoy its benefits inasmuch as Underwriters did pay Thiokol under the policy.

The Court concludes that Counts V and IX are acceptable pleadings of alternate theories of recovery. The demurrer to those counts will be overruled.

### 7. *Punitive Damages*

The Court sustains the demurrer to the claim for punitive damages. Absent the conspiracy counts, the allegations of the Amended Motion for Judgment are insufficient as a matter of law to support a claim for punitive damages. In addition, even if allowed, punitive damages may not exceed $350,000.00 in Virginia by statute. Code § 8.01-38.1

*8. Failure to Allege Sufficient Facts to Show Liability of Tri-City*

The Amended Motion for Judgment sufficiently alleges facts which, if proven at trial, might form a basis of Tri-City's liability to EER. Therefore, the Court overrules Tri-City's general demurrer that EER "has failed to establish either an oral or written contractual relationship between it and Tri-City or facts from which Tri-City's alleged duty to it can be established." EER does not need to *establish* such a relationship in its pleadings, it need only plead facts, which, if proven, would permit the fact finder to conclude that such a relationship existed. The Court concludes that the allegations of Tri-City's agency in this case are adequate to withstand demurrer.

## IV.

*AH&T's Motion in Limine to Exclude All Evidence of EER's Damages and Tri-City's Joinder in that Motion*

EER has informed AH&T and Tri-City of the elements of its damages and provided a report of its expert witnesses who will testify at trial as to EER's damages. AH&T and Tri-City have moved *in limine* to exclude all or part of that expected testimony.

The Court will not repeat here the arguments made by counsel in their thorough briefs on this issue. The Court rules as follows:

1. EER will not be permitted to argue to the jury that it should recover for Mr. Shaughnessy's time spent dealing with the Virginia Federal Litigation.

2. EER will not be permitted to argue to the jury that it should recover for Mr. Shaughnessy's time spent in acquiring a new insurance broker.

3. EER will not be permitted to argue to the jury that it should recover all insurance premiums it paid to AH&T for insurance policies other than the policy that is the subject of this litigation.

4. EER will not be permitted to argue to the jury that it is entitled to the "financing costs" of its damages at the rate of 13.51% per annum (or any other rate). The jury may be asked to exercise its discretion to award pre-judgment interest on any amount it may award. The amount of pre-judgment interest is set by law. Code §§ 8.01-382, 6.1-330.54.

## Conclusion

For the foregoing reasons, AH&T's and Tri-City's Motion to Dismiss Amended Motion for Judgment (as renewed) is granted. AH&T's and Tri-

City's Demurrers to Amended Motion for Judgment are sustained in part and overruled in part, AH&T's and Tri-City's Pleas of the Statute of Limitations are sustained in part (as to Counts III and IV) and overruled in part (as to Counts II, VI, VII, VIII, and IX), and AH&T's Motion to Exclude All Evidence of EER's Damages and Tri-City's Joinder in that Motion are granted in part.