# CIRCUIT COURT OF ARLINGTON COUNTY

John Skibinski et al.

v.

Mary Lunger et al.

January 7, 2008

Case No. (Civil) 06-152

BY JUDGE JOANNE F. ALPER

This case came before the Court on December 7, 2007, for a hearing on Defendants' Motion for Sanctions: Dismissal, Witness Preclusion, or Issue Preclusion. Having taken this matter under advisement and considered the memoranda and arguments submitted by counsel, the Court issues the following opinion.

## I. *Factual and Procedural Background*

This action arises out of the purchase of a residence located at 3224 N. Abingdon Street in Arlington, Virginia (the "Residence"). In 1998, Defendant Mary Lunger constructed an addition to the residence without obtaining permits. As a result, the addition was not inspected by County officials for its structural integrity. On April 28, 2000, Mary Lunger listed the property for sale with her husband's employer, Re/Max Distinctive.

Plaintiffs John Skibinski and Letitia Long made an offer on the Residence on April 30, 2000. The Contract was contingent on a home inspection which was conducted by All-Pro Services, a qualified home inspector, on May 8, 2000. The inspection did not uncover the defects which

are the subject of this suit. The parties closed on the Residence in June of 2000, and Mrs. Lunger along with her husband, Defendant William Lunger, a real estate broker, moved across the street.

On February 2, 2006, Plaintiffs Skibinski and Long filed the underlying Complaint against Defendants Mary Lunger, William Lunger, and Re/Max Distinctive. The Plaintiffs allege that various structural defects and water damage were not disclosed to them and were actively concealed by the Lungers. The Plaintiffs seek recovery for violation of the Virginia Consumer Protection Act, Breach of Contract, Actual Fraud, Constructive Fraud, Fraudulent Inducement, and Conspiracy to Commit Fraud. This Court previously sustained a demurrer to the Breach of Contact claim, and dismissed all claims against Re/Max.

As alleged in Plaintiff's Complaint, the Residence was built in 1940, and was owned by Mary Lunger from 1978 until June 23, 2000. Amended Complaint ¶ 6. Mary Lunger married William Lunger on January 16, 1999, and the Lungers lived in the Residence from January 1999 until June 2000. Amended Complaint ¶ 11. The Residence was listed for sale on April 28, 2000, at a selling price of $860,000. Amended Complaint ¶ 12. William Lunger served as the listing agent and selling broker through Re/Max Distinctive Real Estate, a Re/Max International, Inc., franchise, which was owned by him. Amended Complaint ¶ 13. The Residence was described in the Metropolitan Regional Information System Short listing as a "glamorous, remodeled colonial, 4 bedrooms, 3.5 baths. New kitchen and family [room] open to an enormous terraced flagstone patio with a cascading hot tub and pool. Vernon Daniels lighting makes this an entertainment delight!" Amended Complaint ¶ 15.

Plaintiffs allege that, in 1998, Mrs. Lunger hired Matt Hudlow of Double H Construction to assist in the construction of the rear addition. Amended Complaint ¶ 33. They assert that Hudlow took directions from Mrs. Lunger as to the construction of the addition and no building permits or zoning variances were ever secured during the process. Amended Complaint ¶¶ 35-36. Thereafter, allegedly due to improper construction and support, structural damage and water defects began to occur. Amended Complaint ¶ 44. Plaintiff's claim the Defendants then concealed these defects by various means. Amended Complaint ¶¶ 46-50. In September of 2004, Plaintiffs hired a contractor to estimate the cost of an attic enhancement project. Amended Complaint ¶ 65. The contractor discovered and notified the Plaintiffs of water damage inside the walls and beneath the addition and the lack of support for the roof and addition. Id. In November of 2004 after inspecting the home, the Arlington Department of Community Planning sent the Plaintiffs a letter

informing them that the kitchen and family room were not properly supported, that the improper support was causing the roof to sag, and that the rear of the home appeared to be falling off. Amended Complaint ¶¶ 68-71. The Plaintiffs were required to pay to have the residence made safe or the county would require them to vacate. Amended Complaint ¶ 70.

The Defendants vehemently deny the allegations that they had knowledge of the defects and intentionally concealed them prior to the sale. They have repeatedly and specifically sought information from the Plaintiffs as to the factual basis for these allegations via written interrogatories and requests for production of documents. The issue before the Court relates to whether Plaintiffs failed to timely and properly respond to Defendants' discovery requests in not sufficiently identifying Hudlow until his deposition was taken by Plaintiffs' counsel in October of 2007.

## II. *Discussion*

Both Defendants filed Motions for Sanctions alleging that the Plaintiffs failed to truthfully and completely respond to discovery requests that would have made the Defendants aware of Hudlow, his knowledge, and the basis for Plaintiffs' claims approximately eighteen months earlier in the litigation. Defendants rely upon Virginia Rules 4:1(g) and 4:12, Code of Virginia § 8.01-271.1, and the inherent power of the Court to sanction the Plaintiffs. The Plaintiffs oppose the Defendants' motions by arguing that the information as requested was protected by the attorney work product doctrine, that this objection was never challenged by the Defendants, that the objection was maintained throughout the supplemental discovery answers and was never overruled or waived, and that there must be a violation of a court order before the Court may impose a discovery sanction. Finally, the Plaintiffs assert that there is no prejudice to the Defendants, since they have known of Hudlow's existence since 1999 and have had equal access to him, and further, that all of the information about Hudlow has now been discovered more than six months before trial.

## A. *The Discovery Violations*

Defendant William Lunger's First Set of Interrogatories, propounded in February of 2006, request:

Please identify all persons having any personal knowledge of matters alleged in the complaint. That is, please identify all fact witnesses.

Defendant William Lunger's First Set of Interrogatory Requests, Interrogatory No. 4.

Defendant Mary Lunger's First Set of Interrogatories were even more specific, asking Plaintiff to:

> Identify the factual basis for your contention that Mary Lunger and William Lunger were aware of any defects, violations, structural problems, or unsafe conditions on the Property.

Defendant Mary Lunger's First Set of Interrogatory Requests, Interrogatory No. 10.

Plaintiffs objected to both Defendant William and Mary Lungers' interrogatories by stating:

> Objection, overly broad; unduly burdensome; attorney-work product. Without waiving the objections, see Amended Complaint and our responses to discovery in this matter . . . [t]his answer will be seasonably supplemented.

Plaintiffs' Objections and Responses to Defendant Mary Peyton Lunger's First Set of Interrogatories, Interrogatory Nos. 8 and 10.

These discovery requests, however, are not asking for attorney work product as objected to by the Plaintiffs. The Rules of the Supreme Court of Virginia allow discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Rules of the Supreme Court of Virginia, Rule 4:1. Rule 4:1 later defines work product as follows:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Rules of the Supreme Court of Virginia, Rule 4:1(3).

Generally, the work product doctrine protects an attorney from opening his files for inspection by an opposing attorney. *Rakes v. Fulcher*, 210 Va. 542, 172 S.E.2d 751 (1970). This includes material generated by attorneys in anticipation of litigation such as trial preparation or notes from a witness interview. Here, Defendants requested factual information regarding the basis for the Plaintiffs' claim. Regardless of the fact that the information was obtained by counsel, it is clearly within the scope of discoverable material as contemplated by Rule 4:1. If Defendant William Lunger's interrogatories had requested the identification of witnesses the Plaintiffs intended to call at trial, attorney work product would have been a colorable objection. But simply seeking the identification and knowledge of all witnesses who have knowledge of the facts of the case is not.

Moreover, Defendant Mary Lunger's Interrogatory 10 was more specific and not objectionable in that it asked Plaintiffs to identify the factual basis for their allegation that the Defendants were aware of any "defects, violations, structural problems, or unsafe conditions on the Property." This question required the Plaintiffs to immediate disclose not only the identity of Hudlow but the fact that he would state that he told the Defendants of the alleged defects in 1998. This interrogatory was never properly responded to, and Plaintiffs' failure to so identify Hudlow in response to this question is, in this Court's opinion, the basis for imposing sanctions against the Plaintiffs.

This failure to be forthcoming in discovery continued over the next eighteen months as Plaintiffs' supplemental discovery responses failed to identify Hudlow, the extent of his knowledge, or Hudlow's statements that he discussed the alleged defects with the Defendants. Plaintiffs also failed to produce a letter from between Plaintiff Skibinski to Hudlow, dated August 4, 2005. This letter contained express and implied threats against Mr. Hudlow to help the Plaintiffs in their litigation against the Lungers. Although Plaintiffs eventually identified Hudlow, it was not until Plaintiffs' Second Supplement to Defendant's First Set of Interrogatories in September 2007. Furthermore, in those responses Plaintiff states only that Hudlow has "knowledge of the areas of construction before, during, and after his construction." Plaintiffs' Second Supplemental Answers to Defendant William Lunger's First Set of Interrogatories, Response No. 4. It was not until the deposition of Hudlow on October 22, 2007, that the August 4, 2005, correspondence came to light. At the deposition, Hudlow testified that he placed Defendant William Lunger on notice that there was a potential structural problem with his work. Through cross-examination of Hudlow, Defendant learned that, one year before the deposition, he had been interviewed by phone and in person by Plaintiffs'

counsel and that those discussions revealed his communications with the Defendants. Plaintiffs' counsel then produced the August 4, 2005, correspondence between Plaintiffs and Hudlow which was never previously produced or identified or placed on the original or amended Privilege Log.

This Court finds that, by their failure to disclose Hudlow's existence, and the specifics of his knowledge in response to both Defendants' discovery requests, and by their failure to identify and produce the August 4, 2005, letter, Plaintiffs have violated Rules 4:1 and 4:12 of the Rules of the Supreme Court of Virginia and that sanctions for this violation should be imposed.

Plaintiffs argue that the Court may not impose sanctions for any violation herein since this issue had not previously been the subject of an order compelling discovery. The Court rejects this argument on two grounds: first, the Court entered an order on May 19, 2006, which required supplementation of answers to William Lunger's Interrogatory 8 which would have required the full disclosure of Hudlow and his knowledge. Second, until the deposition of Hudlow, the Defendants had no way to know that Plaintiffs' discovery responses were insufficient and there would have been no good faith basis for Defendants to file a motion to compel. This Court does not believe that the Rules of the Supreme Court are to be so narrowly construed as to allow the type of discovery evasion as occurred here simply because the issue had not squarely been the subject of an order to compel.

## B. *Sanctions*

Virginia Rules 4:1 and 4:12 give the trial court broad discretion in sanctioning a party for a discovery violation. *See Woodbury v. Courtney*, 239 Va. 651, 654 (1990). Defendants have asked the Court to impose a variety of sanctions, including dismissal with prejudice, preclusion of Hudlow's testimony, and monetary sanctions. For the above-discussed discovery violations, this Court imposes the following sanctions.

### 1. *Dismissal of the Complaint*

Defendants cite *EER Systems, Inc. v. Armfield, Harrison, & Thomas, Inc.*, 51 Va. Cir. 84 (Fairfax 1999), to support their request for dismissal. In *EER Systems*, Judge Roush dismissed the Plaintiffs' Amended Motion for Judgment based on numerous and blatant discovery violations. The Plaintiff in *EER Systems* interfered with a witness deposition, altered and destroyed documents, and refused to allow witnesses to be deposed. These discovery violations pervaded every aspect of the case throughout the entirety of the litigation and prevented the Defendant from effectively defending the claims against it.

Here, Defendants allege that, like *EER Systems*, the Plaintiffs have engaged in serious and systematic discovery violations which make dismissal of the complaint, with prejudice, an appropriate sanction. However, unlike *EER Systems*, all the discovery violations in the instant litigation surrounded one witness and Plaintiffs' repeated failure to produce that witness and his knowledge. While Plaintiffs' failure to identify Hudlow has impacted the instant proceedings and is in violation of the rules of discovery, it cannot be said to have caused such a damaging effect as to warrant dismissal. Therefore, because the violations do not pervade every aspect of discovery, but rather the existence and knowledge of only one witness, this Court will not dismiss the complaint with prejudice.

### 2. *Witness Preclusion*

Matthew Hudlow has been known to the Plaintiffs for years. Plaintiffs have pursued this litigation without alerting Defendants of his specific knowledge or testimony, which is the heart of Plaintiffs' claim that Defendant's knew of and actively concealed the structural defects of the Residence. While Plaintiffs' disregard for the rules of discovery concerning this fact witness are severely admonished, this Court hesitates to preclude Hudlow's testimony at this time.

In asking this Court to preclude the testimony of Hudlow, in whole or in part, Defendants cite *Martin v. Nordic Group of Companies, Ltd.*, 61 Va. Cir. 13 (Fairfax 2003), and *Bogush v. Bogush*, 29 Va. Cir. 308 (Fairfax 1992). The Fairfax Circuit Court, in both of these rulings, barred certain testimony as a sanction for discovery violations. In *Martin*, the defendant was barred from denying an issue in light of a key letter produced more than two and a half years later. In *Bogush*, the Court limited evidence at trial due to a party's willful obstruction of discovery.

In this case, the Court declines to impose such sanctions at this time. Trial is set for May 5, 2007, over six months after the deposition of Hudlow. Defendants have time to further depose Hudlow, investigate his involvement, and prepare for his expected testimony. Therefore, Defendants have failed to demonstrate how they are prejudiced by these discovery violations. This Court believes that, because there still remain approximately four months until trial from the date of this opinion, the prejudice to Plaintiffs from precluding Hudlow's testimony outweighs any prejudice to Defendants by the Plaintiffs' failure to timely and fully identify him. Accordingly, the Court denies the request for the sanction of witness preclusion without prejudice, however, to the Defendants' rights to renew the motion if there are further issues of discovery abuse or any demonstrable prejudice related to the late identification of Hudlow.

### 3. *Attorney's Fees*

The existence and knowledge of Matthew Hudlow and his significant testimony has been known by the Plaintiffs for several years. Plaintiffs entirely failed to identify Hudlow and later failed to provide the specifics of his knowledge and his communications with the parties to this case despite specific discovery requests. Interrogatories and document requests were first propounded by the Defendants in February of 2006. Plaintiffs responded in March of 2006 and then supplemented their answers in June and September of 2006 and again in September of 2007. Through each of those responses, Plaintiffs' repeatedly violated the Rules of the Supreme Court of Virginia by failing to completely identify Hudlow, his knowledge, and the relevant communications. Although this Court has the power to dismiss the pending action, or exclude witness testimony, those sanctions are better reserved for more prejudicial and overwhelming discovery abuses. See *EER Systems, Inc.*, 51 Va. Cir. at 102-03; *Bogush*, 29 Va. Cir. at 310-12. Had this information come to the attention of Defendants and the Court within a shorter time until trial than six months, more rigorous sanctions of witness preclusion and possibly dismissal would have been warranted and imposed. As stated earlier, however, because there is still time to complete full discovery regarding Hudlow and Defendants can show no prejudice, other than the monetary cost of bringing these motions, the appropriate sanction for these discovery violations is the requirement that Plaintiffs pay for Defendants' attorneys' fees and costs in connection with these motions, pursuant to Rule 4:12(a)(4). Therefore, both Defendants should provide this Court with their submissions detailing the fees and costs expended in connection with these motions within fourteen days of the date of this letter. Plaintiffs may respond, in writing, with any objections to Defendants' submissions within ten days of receipt and the Court will thereafter make its finding and advise counsel of the specific monetary awards.

### III. *Conclusion*

For the reasons stated herein, the Court will impose sanctions of attorney's fees and costs in favor of both Defendants against the Plaintiffs.