Present: All the Justices

GENERAL INSURANCE OF ROANOKE,
 INCORPORATED, ET AL.
                        OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
v.  Record No. 950195
                                November 3, 1995
JOHN E. PAGE, ET AL.

            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Clifford R. Weckstein, Judge


     The dispositive issue in this appeal is whether an insured's

failure to read his insurance policy constitutes negligence as a

matter of law.

     John E. Page is the sole stockholder of Keep on Trucking

Garage and Road Service, Inc. (the Company).  In separate actions

consolidated for trial, Page and the Company sued General

Insurance of Roanoke, Inc. and its agent, E. Lin Baker, III

(collectively, the agent), claiming that the agent was negligent

in failing to procure adequate insurance coverage against losses

Page sustained as the result of a fire.  A jury returned verdicts

in favor of the Company and Page in the amounts of $46,572 and

$20,000, respectively.  The trial court entered judgments on the

verdicts, and we awarded the agent an appeal.

     The facts will be stated in the light most favorable to Page

and the Company, the prevailing parties at trial.  Page quit

school in the seventh grade because he "couldn't understand what

[he] was reading."  After working at a shirt factory and later at

a powder plant, Page served in the United States Navy.  Following

his honorable discharge from the Navy, Page worked for a trucking

company where he learned the trade of automotive mechanics.

     Subsequently, Page became self-employed, providing on-call

mechanical and tire services for trucking companies.  As his business grew, Page became aware of his need for additional insurance but was unsure of the extent of his need. Consequently, in 1981, he contacted Baker, an independent, licensed property and casualty insurance agent, to assist him.

Page told Baker that he needed to insure his parts inventory and tools and the tractor trailers that he would be servicing in his garage.  Page also informed Baker that his inventory was worth approximately $10,000, that his shop tools were worth approximately $10,000, and that his hand tools were worth approximately $10,000 to $20,000.  Page explained to Baker that he did not know the amounts of his existing insurance coverage and gave Baker a copy of his existing policy.  Page also told Baker that he could not read and understand the policy and that he wanted Baker to handle all his insurance requirements. Thereupon, Baker began servicing Page's insurance needs.

In 1983, Page decided to move from his rented garage and to build a new garage.  To do so, he borrowed $50,000 from a bank, using approximately $30,000 of the loan proceeds to pay off a first mortgage on some land and approximately $20,000 thereof to construct the shell of a building thereon.  He notified Baker that he needed insurance in the amount of $20,000 to cover the building during construction and that he later would need to update the coverage on the completed building.  Page also told Baker that he would need insurance in the amount of $15,000 to

cover some new equipment that would be placed in the building. Baker assured Page that he would take care of his needs.

After the building was completed, Page installed an office at a cost of approximately $5,000, plumbing at a cost of $4,500, electrical systems for $6,500, a heating system for $2,700, and $500 worth of plywood. Thus, upon completion, the new building was worth about $35,000. Additionally, Page purchased all new shop tools and increased his parts inventory.

Approximately two weeks after moving into the new building, Page met with Baker to update his insurance coverage. Page told Baker about the $50,000 bank loan. Page showed Baker the parts inventory and told him that it was worth $15,000 and that it would be increased to $20,000. Page also showed Baker the new shop tools and told him that they were worth $20,000. In addition, Page valued his hand tools at $20,000. Baker told Page he would obtain the insurance.

Baker obtained a policy through Reliance Insurance Companies and personally delivered it to Page. The policy stated on its face the amount of coverage on the building as $20,000 and the amount of coverage on the "personal property of others while contained in [the building]" as $15,000. Page testified that he never read or even looked at the policy and that he just put it in a desk drawer. Page concedes that Baker committed no fraud.

On March 19, 1984, the building and most of its contents were destroyed by a fire. Page lost inventory worth $17,587.61,

hand tools worth about $23,000, and shop tools worth $17,585. His loss on the building was $25,000 to $30,000. Other insurance paid approximately $7,000 toward the loss of the hand tools, leaving Page's loss for these at about $16,000.

The agent contends on appeal, as it did at trial, that Page's failure to read the insurance policy constituted negligence, as a matter of law, and that such negligence proximately caused his losses and precluded recovery against it.[*] While we previously have not decided the precise issue presented in the present case, we have held that one who signs an application for life insurance without reading the application or having someone read it to him is chargeable with notice of the application's contents and is bound thereby. Peoples Life Ins. Co. v. Parker, 179 Va. 662, 667, 20 S.E.2d 485, 487 (1942); Royal Insurance Co. v. Poole, 148 Va. 363, 376-77, 138 S.E. 487, 491 (1927). We also have held that the failure of a grantor to read a deed will not relieve him of obligations contained therein.

_____

[*]Page and the Company (the plaintiffs) contend on appeal that the agent waived the defense of contributory negligence because it failed to object to the submission of the issue to the jury. We do not agree.
The record shows that throughout the trial, and even after the verdict, the agent relied upon, and the trial court was fully apprised of, the defense. Indeed, after overruling the agent's motion to strike the plaintiffs' evidence, the trial court stated the following: "The [agent's] objections to this ruling are preserved . . . without the necessity for saying anything further on the subject." Thus, given the procedural posture of the present case, we hold that no waiver occurred. See Wright v. Norfolk and Western Railway Co., 245 Va. 160, 427 S.E.2d 724 (1993).

Carter v. Carter, 223 Va. 505, 509, 291 S.E.2d 218, 221 (1982). See Metro Realty v. Woolard, 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982) (absent fraud, one who has capacity to understand written document and signs it without reading it or having it read to him is bound thereby).  While the decisions cited are contract cases, we think the same rule should apply in negligence actions.

In the present case, Baker handed Page the insurance policy that stated plainly on its face that the building was insured for $20,000 and the personal property of others on the premises was insured for $15,000.  Page, however, never so much as looked at the insurance policy, but simply placed it in a desk drawer.

Page testified that he has reading difficulties.  Page had a duty, nonetheless, to have his wife, who occasionally helped with business matters, or someone else read the policy to him if he could not read it.  We conclude, therefore, that Page's failure to read the policy or to have someone read it to him constitutes negligence as a matter of law that bars a recovery against the agent.

Accordingly, the trial court's judgments will be reversed and vacated, and final judgment will be entered in favor of the agent.

Reversed and final judgment.