George BROWNE Plaintiff,

v.

**KLINE TYSONS IMPORTS, INC. Defendant.**

No. CIV.A. 01–1888–A.

United States District Court, E.D. Virginia, Alexandria Division.

March 14, 2002.

---

828

Alexander Hugo Blankinship, Esquire, Blankinship & Associates, Alexandria, VA, for Plaintiff.

Robert Tayloe Ross, Esquire, Midkiff Muncie & Rosse, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Defendant's Motion to Stay Pending Arbitration. The issue before the Court is whether to stay litigation pending arbitration on the basis that Plaintiff waived his right to bring his Magnuson–Moss Warranty Act, other statutory, and common law claims arising from the sale of a vehicle by signing a Buyer's Order, which contained an agreement to submit all claims related to the sale of the vehicle to binding arbitration. This Court heard oral arguments on Friday, March 1, 2002 and for the reasons stated in open court and below, this Court holds that Plaintiff's claims under the Magnuson–Moss Warranty Act, with respect to written warranties, are not subject to binding arbitration because Congress evinced an intent to allow consumers the ability to adjudicate such claims in court. Therefore, Plaintiff's Magnuson–Moss Warranty Act claim (Count I) is not stayed. However, Plaintiff's remaining claims are stayed pending arbitration (Counts II–XI) because the parties waived their right to adjudicate these claims in court, and Plaintiff asserts no mandate that waiver of these claims is impermissible. Therefore, with the exception of Plaintiff's claims under the Magnuson–Moss Warranty Act (Count I), Defendant's Motion is GRANTED.

### I.

This case involves Plaintiff George Browne's purchase of a 1998 Toyota Camry ("Vehicle") from Defendant Kline Tysons Imports, Inc. ("Kline"). Kline marketed this Vehicle as a Toyota Certified Used Vehicle, which allegedly guarantees that the Vehicle would be defect free or will meet a specified level of performance. (Compl.¶ 37.) On December 14, 2000 and January 13, 2001, Browne signed numerous documents in order to facilitate the purchase the Vehicle. In particular to the matter before the Court, Browne signed a Buyer's Order relating to the purchase of the Vehicle, which provided that:

16. We agree that any claim dispute or controversy relating to this agreement shall be resolved by binding arbitration through the National Arbitration Forum under its code of procedure then in effect.... The parties acknowledge that they have knowingly waived their rights to a judge or jury trial ....

(Def. Ex. A, ¶ 16: Buyer's Order.) On December 12, 2001, Browne filed an eleven-count Complaint against Kline alleging violations under the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* (Count I), Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, (Count II), various sections of the Virginia Consumer Protection Act ("VCPA"), VA. CODE § 59.1–196 *et seq.* (Counts III–IX), breach of contract (Count X), and fraud (Count XI). On January 30, 2002, Kline filed a motion for stay of litigation pending binding arbitration, pursuant to the arbitration provision in the Buyer's Order. Kline's motion for stay pending arbitration is now before this Court.

### II.

The Federal Arbitration Act ("FAA") requires the Court to enforce arbitration agreements. 9 U.S.C. § 1, *et seq.* In particular, section 3 of the FAA gives courts the power to stay an action pursuant to an enforceable arbitration agreement until after the arbitration. *See id.* at § 3. When considering whether the parties' agreement to arbitrate is enforceable it is important for the court to consider the FAA's purpose "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct.

1647, 114 L.Ed.2d 26 (1991). Whether a party has agreed to arbitrate is an issue that is a matter of contract interpretation. *See Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir.1998). The FAA permits contracting parties to include a provision in their agreement that refers statutory claims arising under the contract to arbitration. *See, e.g., Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647. However, in determining whether statutory claims may be sent to arbitration, the Court should engage in a two-part inquiry. *See Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). First, the court should ask whether the parties agreed to submit their claims to arbitration. *See id.* Second, the court should ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. *See id.* The burden of establishing that Congress intended to preclude arbitration for a statutory claim rests with the party seeking to avoid arbitration. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

### A.

■■■ Browne assented to arbitration of his disputes arising out of the sale and financing of the Vehicle. One who signs a contract is presumed to know and assent to the terms contained therein. *See General Ins. of Roanoke, Inc. v. Page*, 250 Va. 409, 464 S.E.2d 343, 344 (1995); *see also Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 306 (4th Cir.2001). Browne signed the Buyer's Order on January 13, 2001, which consummated the sale of the Vehicle pending approval of a retail installment sale contract. (Def. Ex. A, ¶ 16: Buyer's Order.) The back of the Buyer's Order states that the parties agree that "any claim, dispute or controversy relating to this agreement shall be resolved by binding arbitration ..." (*Id.*) Browne signed the Buyer's Order and initialed on

the back of the Order just below the arbitration provision. Browne's knowledge and intent to be bound by arbitration is shown through his signature on the Buyer's Order and initialing the reverse side. Therefore, Browne intended to submit claims arising out of the dispute of the sale of the Vehicle to arbitration.

### B.

■■■ Kline argues that the language of the MMWA evidences Congress' intent not to preclude parties from agreeing to binding arbitration of written warranties. Congress' intention may be found in the text, legislative history, or in the statute's language and underlying purpose. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647; *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981). Congress enacted the MMWA to "improve the adequacy of information available to consumers, prevent deception, and [to] improve competition in the marketing of consumer products." *See Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 617 (11th Cir.2001) (quoting 15 U.S.C. § 2302). Even though the MMWA does not require manufacturers to provide warranties, the MMWA creates specific duties and liabilities for manufacturers that choose to do so. *See id.* (citing 16 C.F.R. § 700.03). With respect to dispute resolution for alleged breach of duties arising under written warranties, the text of the MMWA states in relevant part:

> Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms.

15 U.S.C. § 2310(a)(1). In addition, with respect to remedies, the statute states that:

> ... a consumer who is damaged by the failure of a supplier, warrantor or ser-

vice contractor to comply with any obligation under this chapter under a written warranty, implied warranty or service contract may bring suit for damages and other legal and equitable relief ... (B) in an appropriate district court.

*Id.* at § 2310(d)(1). A clear reading of the statute evinces Congress' intent to encourage informal dispute settlement mechanisms, yet not deprive any party of their right to have their written warranty dispute adjudicated in a judicial forum. *See Pitchford v. Oakwood Mobile Homes, Inc.,* 124 F.Supp.2d 958, 963 (W.D.Va.2000); *Raesly v. Grand Housing, Inc.,* 105 F.Supp.2d 562, 573 (S.D.Miss.2000) (holding that binding arbitration of written warranty agreements is forbidden by the MMWA); *Wilson v. Waverlee Homes, Inc.,* 954 F.Supp. 1530, 1538 (M.D.Ala.), *aff'd,* 127 F.3d 40 (11th Cir.1997) (holding that intent of the MMWA with respect to written warranties is that consumers are to retain full and unfettered access to courts for resolution of their disputes); *but see Southern Energy Homes, Inc. v. Ard,* 772 So.2d 1131, 1135 (Ala.2000)(holding that binding arbitration is permissible under the MMWA); *Southern Energy Homes, Inc. v. Lee,* 732 So.2d 994, 1008 (Ala.1999)(dissent), *overruled by and dissent adopted in Ard,* 772 So.2d at 1135 (same). Any informal dispute settlement procedure that may be utilized to resolve written warranty disputes under the MMWA must be a non-binding mechanism, which serves as a prerequisite, and not a bar, to relief in court.

Agency interpretation supports the reasoning that written warranty claims under the MMWA are not subject to binding arbitration. Regulations, promulgated by the governmental body responsible for interpreting or administering a statute, are entitled to considerable respect. *See Ford Motor Credit Co.,* 452 U.S. at 158 n. 3, 101 S.Ct. 2239. The Federal Trade Commission ("FTC") was charged with administering the MMWA. *See* 15 U.S.C. § 2302(b)(1). The FTC's regulations mirror the MMWA's statutory language to encourage dispute resolution, yet mandate that consumers have full and final access to the courts for resolution of their written warranty disputes. In particular, the FTC states that informal dispute settlement procedures must be set forth in the terms of the written warranty. *See* 16 C.F.R. § 703.1(c). Nonetheless, any informal dispute mechanism for resolving a written warranty dispute "shall not be legally binding on any person." *Id.* at § 703.5(j). The FTC also provides that if the consumer is dissatisfied with the informal dispute process, then the consumer may pursue other legal remedies such as small claims court. *See id.* at § 703.5(g). Therefore, the FTC's findings support this Court's conclusion: the MMWA prohibits binding arbitration of a claim arising under a written warranty because any informal dispute procedure proffered by a warrantor cannot be final.

Ultimately, the arbitration clause within the Buyer's Order mandates binding arbitration, and therefore is not a proper mechanism for resolving Browne's written warranty disputes under the MMWA.

### C.

■■ Kline argues, in the alternative, that the Court may order non-binding arbitration under the Buyer's Order because *Pitchford* and the FTC's regulations only stand for the proposition that the MMWA prohibits **binding** arbitration. In order to determine the issue of whether the contract between the parties to arbitrate is enforceable, notwithstanding the binding arbitration provision, the court must apply Virginia law of contract. *See Pitchford,* 124 F.Supp.2d at 965 (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). A

court should consider a contract as a whole if the terms, nature, and purpose of it contemplate and intend that all of the contract's parts are common to each other and interdependent. *See id.* (citing *Shelton v. Stewart*, 193 Va. 162, 67 S.E.2d 841 (1951)). Virginia law permits clauses of contracts to be severed from the main contract if the parties manifest the intent that such portions of the contract can survive on their own. *See Reistroffer v. Person*, 247 Va. 45, 439 S.E.2d 376, 379 (1994); *Vega v. Chattan Associates, Inc.*, 246 Va. 196, 435 S.E.2d 142, 143 (1993). Severing a clause from a contract constitutes construing a clause independently, and should be recognized as distinct from rewriting or "blue penciling" a contract, which is prohibited in Virginia, because it emphasizes deleting or adding words to a contract. *See Pitchford*, 124 F.Supp.2d at 966 (acknowledging that the binding arbitration provision could not be severed because there was no isolated clause around the fact that the parties would be bound to the arbitration or that the arbitration provision would be included in the warranty).

▉ The binding nature of the arbitration clause within the Buyer's Order cannot be severed from the agreement to arbitrate. The arbitration provision within the Buyer's Order provides that:

> any claim, dispute or controversy relating to this agreement shall be resolved by binding arbitration through the National Arbitration Forum under its code of procedure then in effect. . . . The parties acknowledge that they have knowingly waived their rights to a judge or jury trial . . . .

(Def. Ex. A, ¶ 16: Buyer's Order.) The warranty itself does not refer to an arbitration provision. (Compl.Ex. A.) The Buyer's Order is the only contract that refers to arbitration and it only states "binding arbitration." Kline does not seek to eliminate a clause, it seeks to delete a word within the clause: "binding." The Court finds this to be an impermissible attempt to rewrite the contract at issue. Kline should not be permitted to repudiate the obligation of the clause (the binding nature) yet seek a remedy arising from that same clause (the arbitration itself). Therefore, the Court declines to rewrite the Buyer's Order and mandate non-binding arbitration. The Buyer's Order provides for binding arbitration, Kline's claims under the MMWA are not subject to binding arbitration, therefore, it is beyond this Court's authority to stay such claims.

### D.

▉ Browne argues that the entire arbitration agreement is unenforceable, with respect to all of the claims, because it is in violation of the MMWA. This argument is without merit. When a court finds a particular claim nonarbitrable, the court must nevertheless compel arbitration for otherwise arbitrable claims notwithstanding the likely inefficiency of bifurcating the proceedings. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Browne does not object to the fact that it is permissible for parties to agree to submit their TILA, VCPA, and Virginia common law claim to binding arbitration. *See Johnson v. West Suburban Bank*, 225 F.3d 366, 369 (3d Cir.2000) (TILA); *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1436 (M.D.Ala. 1997) (implied and non-written warranties under MMWA); *see generally Sydnor*, 252 F.3d at 306 (VCPA, TILA, and Virginia common law). As shown above, Browne and Kline agreed that they would submit claims arising out of the sale of the Vehicle to binding arbitration. Browne does not set forth any document or case showing a Congressional intent to preclude these claims from binding arbitration. Therefore, the Court stays Browne's claims under TILA, VCPA, and Virginia common law pending arbitration (Counts II–XI).

III.

Kline's Motion to Stay Pending Arbitration is GRANTED in Part. Browne's claims under the MMWA, with respect to written warranties, are not subject to binding arbitration because Congress evinced an intent to allow consumers the ability to adjudicate such claims in court. Therefore, this Court declines to stay Browne's claims under the MMWA (Count I). However, the Court does stay Browne's claims under TILA, VCPA, and Virginia common law pending arbitration (Counts II–XI) because the parties waived their right to adjudicate these claims in court by agreeing to arbitrate such claims, and Browne asserts no mandate that waiver of these claims is impermissible. Accordingly, it is hereby

ORDERED that Defendant's Motion to Stay Pending Arbitration is GRANTED with respect to Counts II–XI of Plaintiff's Complaint and DENIED with respect to Count I of Plaintiff's Complaint.

The Clerk is directed to forward a copy of this Order to counsel of record.