# CIRCUIT COURT OF FAIRFAX COUNTY

Lloyd J. Tucker

v.

Ford Motor Co.
and Geneva Enterprises, Inc.,
d/b/a Rosenthal Jaguar/Land Rover

February 1, 2007

Case No. CL-2006-2827

BY JUDGE KATHLEEN H. MACKAY

Plaintiff Lloyd J. Tucker purchased a used 2001 S-Type Jaguar[1] from Defendant Geneva Enterprises, Inc., d/b/a Rosenthal Jaguar/Land Rover, on August 30, 2003, for $36,016.95. At the time of sale, Plaintiff signed a Buyer's Order. The Buyer's Order conspicuously stated:

> CUSTOMER ARBITRATION: If a dispute occurs between the customer and the dealer regarding the sale or service of this vehicle, and the statute of limitations for filing a claim has not

---

[1] Jaguar is a registered brand of Ford Motor Company, a Delaware corporation licensed to business in Virginia. Ford is also a Defendant in this suit.

yet expired, the dispute shall be submitted to the American Arbitration Association for **FINAL BINDING ARBITRATION (See # 11 on reverse side)**.

On the reverse side of the Buyer's Order, # 11 states in pertinent part that "DEALER MAKES NO WARRANTY ... EXCEPT IF DEALER ENTERS INTO A WARRANTY/SERVICE CONTRACT." Plaintiff and Defendant Geneva Enterprises, Inc., entered into a "Warranty/Service Contract" at the time of sale. Defendant denied entering into a service contract or warranty with Plaintiff. (¶ 4 of Defendant's Answer to Plaintiff's Amended Complaint.) Despite this denial, multiple repair bills indicate that substantial portions of Plaintiff's repair costs were covered under a warranty. Between September 19, 2003, and August 31, 2005, Plaintiff took the vehicle back to Defendant for service on over thirteen occasions. Among Plaintiff's more serious complaints were that the vehicle leaked; the alignment, steering, and balance caused the vehicle to vibrate and drive poorly; a window was stuck in the "down" position; and the CD player failed to function. Plaintiff provided Defendant with a sufficient opportunity to cure the vehicle's defects by repairing or replacing the same.

Plaintiff's initial Complaint was filed on March 6, 2006. Defendant filed an Answer and Grounds of Defense on April 26, 2006. In that pleading, Defendant cited the relevant arbitration language of the Buyer's Order and asked the court to dismiss the suit pending arbitration. Defendant filed a Motion to Stay Proceedings and Compel Arbitration on August 10, 2006. Plaintiff filed a Motion for Leave to Amend Complaint on August 28, 2006, followed by a response to Defendant's Motion to Stay Proceedings on September 18, 2006. On September 29, 2006, the court heard Plaintiff's Motion for leave to file an Amended Complaint and Defendant's Motion to Stay Proceedings.[2] A September 29, 2006, court order granted Plaintiff leave and deemed Plaintiff's previously submitted Amended Complaint as filed of that date. The amended complaint asserts nine counts: (Count 1) Breach of Express Warranty under the Virginia Uniform Commercial Code ("VUCC"), (Count 2) Breach of Implied Warranty of Merchantability under the VUCC, (Count 3) Breach of Written Warranty under Magnusson-Moss Warranty Act, (Count 4) Breach of Implied Warranty under Magnusson-Moss Warranty Act, (Count 5) Violation of the Virginia Consumer Protection Act, Va. Code

---

[2] Plaintiff's attorney appeared via telephone in accordance with the Circuit Court of Fairfax County's use of the "*CourtCall* Telephonic Appearance Program." Though the absent party can interact with present parties, "judge-absent party" colloquy is markedly difficult.

§ 59.1-196 et seq., (Count 6) Violation of the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code § 59.1-207 et seq., (Count 7) Revocation of Acceptance, (Count 8) Actual Fraud, and (Count 9) Constructive Fraud.

On September 29, 2006, pursuant to an order, the court took Defendant's Motion to Stay Proceedings under advisement and further requested that the parties brief the "fraud in the inducement" issue which arose at the hearing. Since the hearing, I have taken the parties' briefs and arguments into account.

## I. *Fraud in the Inducement*

Plaintiff alleges Defendant fraudulently induced Plaintiff's agreement to the Buyer's Order. A contract, the consideration for which is fraudulently induced, is voidable and unenforceable. *Wilson v. Hundley*, 96 Va. 96, 100-01 (1898). Where parties have agreed to arbitrate,[3] however, an allegation of fraud in the inducement is a claim which the parties must arbitrate unless the alleged fraudulent conduct induced the acceptance of the contract's arbitration provision specifically. *Prima Paint Corp. v. Flood & Conlkin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Virginia Courts have found the federal courts' consideration of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., to be instructive when interpreting the Virginia Uniform Arbitration Act, Va. Code § 8.01-581.01 et seq. *McMullin v. Union Land & Management Co.*, 242 Va. 337, 341 (1991). "[I]f the claim is fraud in the inducement of the arbitration clause itself … the … court may proceed to adjudicate it. But the statutory language does not permit the … court to consider claims of fraud in the inducement of the contract generally." *Prima Paint*, 388 U.S. at 403-04. Thus, allegations that the contract generally was procured by fraud do not eliminate the parties' obligation to arbitrate pursuant to the arbitration provision. Plaintiff has not alleged that the arbitration clause was specifically procured by fraud.

---

[3] "By adopting the Uniform Arbitration Act (Va. Code § 8.01-581.01 et seq.), Virginia makes valid and enforceable any written agreement to arbitrate any controversy thereafter arising between parties, except upon such grounds as exist at law or in equity for the revocation of any contract. In all material respects, the Virginia Uniform Arbitration Act is similar to the Federal Arbitration Act, an earlier federal law, which has been the subject of numerous federal and state court decisions." *Ahern v. Toll Bros.*, 55 Va. Cir. 18, 20-21 (2001) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983)).

Plaintiff attempts to limit *Prima Paint*'s reach by subscribing its application to only "broad" arbitration clauses. A proper application of *Prima Paint*'s reasoning requires the court to determine whether the arbitration provision in the Buyer's Order is sufficiently broad to include non-breach controversies, including alleged deficiencies in the contract's formation. The arbitration clause in *Prima Paint* was broad, requiring arbitration of "[a]ny controversy or claim arising out of or relating to [the] Agreement." *Prima Paint*, 388 U.S. at 398. An arbitration clause containing the language "arising out of and relating to this agreement or breach hereof" is a broad arbitration clauses that encompasses disputes on and off the contract. *See McMullin v. Union Land & Management Co.*, 242 Va. 337, 341 (1991). The Buyer's Order arbitration provision requires arbitration of all controversies "regarding the sale or service of [the] vehicle." The phrase "regarding the sale" is equivalent to the phrase "relating to ... the Agreement" found in the *Prima Paint* provision. The arbitration provision in *Prima Paint* also includes the phrase "arising out of." *Prima Paint*, 388 U.S. at 398. Plaintiff contends that phrases such as "arising out of" and "arising hereunder" are narrow clauses, citing *Mediterranean Enterprises, Inc. v. Ssabyong Corp.*, 708 F.2d 1458, 1456 (9th Cir. 1983). The inclusion of the language "arising out of" and "arising hereunder" is insufficient to convert a broad provision to a narrow provision, because *Prima Paint*'s provision contained this language but was held to be a broad arbitration clause. Thus in *Prima Paint*, the inclusion of the phase *"relating to"* provided the sufficient breadth to overcome the narrowing "arising under" language. The Buyer's Order arbitration clause contains only the broad "regarding the sale" language, indicating that a broad reading of its scope is proper.

Allegations of fraudulent acts regarding contract formation sufficiently "regard[] the sale" of the vehicle to bring Plaintiff's allegation with the ambit of *Prima Paint*. Accordingly, whether Defendant fraudulently induced Plaintiff to enter the contract is a question that must be arbitrated unless Plaintiff specifically alleged fraudulent inducement of the arbitration provision itself. Because Plaintiff has not pleaded that the arbitration clause specifically was fraudulently induced, the parties must arbitrate the fraudulent inducement issue pursuant to the terms of the Buyer's Order's arbitration clause, if arbitration is not otherwise prohibited.

## II. *Magnusson Moss Warranty Act ("MMWA")*

The Magnusson-Moss Warranty Act was enacted "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products. . . ." 15 U.S.C.

§ 2302(a). Contemporaneous Federal Trade Commission reports discussing the commercial atmosphere noted "the consumer does not have a readily available or practical means of compelling the manufacture or retailer ... to perform their ... warranty obligations." H.R. Rep. No. 93-1107, at 24, 27-28, reprinted in 1974 U.S.C.C.A.N. 7705, 7710. To provide consumers with a reasonable opportunity to enforce the terms of a warranty against manufactures, the MMWA created specific remedies available to a consumer involved in a warranty dispute. 15 U.S.C. § 2310. The statute first "declares it to be [Congress'] policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). Congress delegated responsibility for establishing the "minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty" to the Federal Trade Commission. 15 U.S.C. § 2310(a)(2).

The MMWA also created a private cause of action for consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract. . . ." 15 U.S.C. § 2310(d)(1). Jurisdiction is proper "in any court of competent jurisdiction in any State or the District of Columbia; or in an appropriate district court of the United States." 15 U.S.C. § 2310(d)(1)(A), (B). The MMWA allows a successful plaintiff to recover attorney's fees for, and the costs of, seeking relief in the courts. 15 U.S.C. § 2310(d)(2). Critically, if a warrantor has established an "informal dispute settlement mechanism/procedure," 15 U.S.C. § 2310(a)(C)(i) precludes a consumer from seeking a judicial forum under 15 U.S.C. § 2310(d) for the adjudication of an alleged violation of the MMWA "unless he initially resorts to such [15 U.S.C. § 2310(a) Informal Dispute Settlement] procedure."

The MMWA does not define either "informal dispute settlement mechanism" or "informal dispute settlement procedure." 15 U.S.C. § 2310(a)(1), (a)(2)-(3). Nor does a definition appear in 15 U.S.C. § 2301, the definitions section for the chapter. However, if a warrantor establishes an informal dispute settlement procedure, the procedure must meet the minimum requirements established by the FTC. To provide consumers with adequate information regarding their remedies, 15 U.S.C. § 2310(a)(3)(B), (C) requires that written warranties "incorporate [the] requirement that the consumer resort to such procedure before pursuing any legal remedy." In setting forth the minimum requirements of an "informal dispute settlement procedure" as required by 15 U.S.C. § 2310(a)(2), the FTC has adopted a regulation *precluding binding arbitration*. 16 C.F.R. § 703.5(j) (emphasis added). Thus,

under current FTC interpretation of 15 U.S.C. § 2310(a) and 15 U.S.C. § 2310(d), a written warranty which requires the parties to enter binding arbitration does not meet the minimum requirements and is therefore not a valid "informal dispute settlement procedure." Absent a valid "informal dispute settlement procedure," the consumer's obligation to initially resort to the informal procedure is vitiated and she can commence a civil action pursuant to 15 U.S.C. § 2310(d).

In this case, Plaintiff Tucker contends the FTC's regulation precluding the use of binding arbitration as an "informal dispute settlement procedure" renders the arbitration clause in the Buyer's Order unenforceable. As noted *infra*, the FTC regulation could only preclude final binding arbitration of a federal statutory cause of action initiated under MMWA. Because the binding arbitration clause is unenforceable, Plaintiff argues, he may bypass arbitration and commence a suit under 15 U.S.C. § 2310(d) in the Circuit Court of Fairfax County.

A. *The Federal Arbitration Act 9 U.S.C. § 1 et seq. ("FAA")*

In 1925, Congress enacted the Federal Arbitration Act ("FAA")[4] "to reverse the longstanding judicial hostility towards arbitration that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save on such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Initially, federal courts held that arbitration of statutory causes of action were disfavored and impermissible. *See, Wilko v. Swan*, 346 U.S. 427 (1953) (finding generally that arbitration provisions did not protect consumer or statutory plaintiffs). Current arbitration jurisprudence favors arbitration of most claims and *Wilko's* skeptical stance towards arbitration is no longer convincing. In 1991, the Supreme Court noted in *Gilmer* that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26, citing a progression of cases permitting arbitration under the FAA of statutory causes of action, including the Sherman Act, 15 U.S.C. §§ 1-7; § 10(b) of the

---

[4] Originally at 43 Stat. 883, reenacted and codified in 1947 at 9 U.S.C. 1 *et seq.*

Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987); *Rodriguez de Quijas v. Shearson/American .Express, Inc.*, 490 U.S. 477 (1989).

Not every statute-based claim may be arbitrated. The court utilizes a two-part test to determine if a statutory claim may be arbitrated. First, the court must "ask whether the parties agreed to submit their claims to arbitration." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). In the instant case, Tucker agreed to arbitrate any statutory claims arising out of the sale or service of the vehicle by signing the Buyer's Order. The court next asks "whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory right at issue, [arbitration]." *Green Tree Financial*, 531 U.S. at 90 (citing *Gilmer*, 500 U.S. at 26). To determine if Congress intended to preclude arbitration, courts must apply the Supreme Court's *McMahon* test. *Green Tree Financial*, 531 U.S. at 91, 92 (applying a three-component test from *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)); *Gilmer*, 500 U.S. at 26. Under the *McMahon* test, Congress' intent "to limit or prohibit waiver of a judicial forum for a particular claim ... will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. 220, 227 (1987) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632-37 (1985)). The United States Court of Appeals for the Eleventh Circuit has noted that "[i]n every statutory right case that the Supreme Court has considered, it has upheld binding arbitration if the statute creating the right did not *explicitly* preclude arbitration." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1273 (2002).

### 1. McMahon Test

#### a. McMahon Test, Part I: Text of the MMWA

Several federal district courts, including one within the Commonwealth, have discerned congressional intent to preclude binding arbitration of written warranties in the text of the act. *Brown v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827, 831 (E.D. Va. 2002); *Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1532 (M.D. Ala. 1997) (overruled by *Davis v. Southern Energy*

*Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002)). In *Brown v. Kline Tysons Imports*, Judge Gerald Lee relied on the MMWA's provision of a judicial remedy under 15 U.S.C. § 2310(d)(1), that damaged consumers "may bring suits for damages and other legal and equitable relief," to hold that "[a] clear reading of the statute evinces Congress' intent ... [to] not deprive any party of their right to have their warranty dispute adjudicate in a judicial forum." *Brown*, 190 F. Supp. 2d at 831. Judge Lee accordingly held that "[a]ny informal dispute settlement procedure that may be utilized to resolve written warranty disputes under the MMWA must be a non-binding mechanism, which serves as a prerequisite, and not a bar, to relief in court." *Brown*, 190 F. Supp. 2d at 831. Similarly, the Court in *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 963-64 (W.D. Va. 2000), relied heavily on the FTC's interpretation of 15 U.S.C. § 2310(a) and 15 U.S.C. § 2310(d) to find that Congress intended to preclude binding arbitration of written warranty claims.

The two federal circuit courts of appeal to address this issue in published opinions have held that the text of the MMWA does not evince Congress' intent to preclude binding arbitration. *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002); *Walton v. Rose Mobile Homes, L.L.C.*, 298 F.3d 470 (5th Cir. 2002). Because *Davis* and *Walton* dominate the jurisprudence regarding the arbitrability of MMWA claims, this court's consideration of the subject naturally requires a thorough examination of these holdings. Each court proceeded beyond the MMWA's text and examined both the legislative history and whether arbitration of MMWA claims would inherently conflict with the act's purpose. In *Davis*, the Eleventh Circuit held that *Gilmer* required lower courts to address questions of arbitrability "with a healthy regard for the federal policy favoring arbitration," *Davis*, 305 F.3d at 1273-74. Accordingly, the *Davis* panel phrased the inquiry; "whether Congress *clearly expressed* an intention to preclude binding arbitration of MMWA claims." *Davis*, 305 F.3d at 1274 (emphasis added).

### i. *Creation of a Judicial Forum*

The Fifth and Eleventh Circuits did not find that the MMWA's creation of a judicial remedy and jurisdiction grant evinced congressional intent to preclude binding arbitration. *Davis*, 305 F.3d at 1274; *Walton*, 298 F.3d at 476. *Davis* specifically cites the Supreme Court's *Gilmer* decision for the proposition that "a statute's provision of a private right of action *alone* is inadequate to show that Congress intended to prohibit arbitration." *Davis*, 305 F.3d at 1274 (citing *Gilmer*, 500 U.S. at 29). Likewise, *Walton* cites the

Supreme Court's decision in *McMahon* for the proposition that "the fact … the MMWA creates a judicial forum for MMWA claims is insufficient evidence of congressional intent to preclude application of the FAA." *Walton*, 298 F.3d at 476 (citing *McMahon*, 473 U.S. at 26 ("finding that a provision of the Security Exchange Act stating that 'the district courts of the United States … shall have exclusive jurisdiction of violation of this title or the rules and regulation thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title,' did not preclude application of the FAA to claims brought under the statute.")). This court is in agreement with the Fifth and Eleventh Circuits, that the creation of a judicial forum in 15 U.S.C. § 2310(d) does not demonstrate congressional intent to preclude binding arbitration of MMWA § 2310(a) claims.

### ii. *Judicial and Arbitration Equivalence*

The MMWA text does not show congressional intent to preclude binding arbitration because arbitration is not a denigration of the MMWA's remedies. MMWA's remedies are not denigrated because "binding arbitration is generally understood to be a substitute for filing a lawsuit, not a prerequisite." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Davis*, 305 F.3d at 1274-75; *Walton*, 298 F.3d at 476-77. In *Mitsubishi*, the Supreme Court held that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi*, 473 U.S. at 628. According to this view, because binding arbitration provides aggrieved consumers with an equivalent, though distinct, forum for the resolution of warranty disputes, the MMWA's creation of a judicial forum does not clearly express Congress' intent to preclude binding arbitration.

### iii. *Congressional Silence*

In determining whether the text of the MMWA does evince congressional intent to preclude final binding arbitration, Congress' silence is instructive. *See, Davis*, 305 F.3d at 1274-75. When drafting the MMWA, Congress was aware that arbitration generally, and binding arbitration specifically, were potential remedial forums. However, 15 U.S.C. § 2310(a) only mentions "informal dispute settlement procedures" and "informal dispute settlement mechanism." The text of the MMWA fails to mention arbitration

generally or binding arbitration specifically. Because Congress knew how to expressly preclude binding arbitration and how to enact legislation that would not follow the FAA's presumption of arbitrability, congressional silence is important. *See, Davis*, 305 F.3d at 1274-75. The *Walton* court also adopts a conclusory position, without citation or reference, that "binding arbitration is not normally considered to be an 'informal dispute settlement procedure,' and it therefore seems to fall outside the boundary of the MMWA and the FTC's power to prescribe regulation." *Walton*, 298 F.3d 470, 476 (5th Cir. 2002). Congress' failure to expressly rebut the FAA's presumption of arbitrability of statutory claims is evidence that Congress did not intend to preclude binding arbitration of MMWA claims. *See, Davis*, 305 F.3d at 1274-75.

### b. *McMahon Test, Part II: Legislative History of the MMWA*

The legislative history provides little evidence of a congressional intent to preclude binding arbitration. The critical phrase, "informal dispute settlement procedures," is discussed only briefly. *See Davis*, 305 F.3d at 1275; *Walton*, 298 F.3d at 476-77. Despite a House Report stating that "an adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding," 1974 U.S.C.C.A.N. 7702, 7723, each Circuit held that the legislative history was ambiguous. Thus, the legislative history did not clearly express congressional design to preclude application of the FAA. *Davis*, 305 F.3d at 1276; *Walton*, 298 F.3d at 476-77. This court concurs with the Fifth and Eleventh Circuits that the available legislative history does not demonstrate that Congress intended to prelude application of the FAA to MMWA claims.

### c. *McMahon Test. Part III: Inherent Conflict*

Application of the FAA to MMWA claims does not inherently conflict with the MMWA's primary purpose, under 15 U.S.C. § 2302(a), of "improv[ing] the adequacy of information available to consumers, prevent[ing] deception, and improv[ing] competition in the marketing of consumer products." Allowing consumers to select between multiple forums for the resolution of warranty disputes would not contradict the MMWA's purpose unless binding arbitration effectively prevents consumers from obtaining relief. Given Congress' policy favoring arbitration, 9 U.S.C. § 1 et

seq., and the Supreme Court's staunch support and expansion of this policy,[5] this court is unable to conclude that binding arbitration of written warranty disputes inherently conflicts with the purpose of the MMWA.

### d. *Results of the McMahon Test*

In accordance with the reasoning of the Fifth and Eleventh Circuits, an application of the *McMahon* test fails to discern Congress' intent in either the text or legislative history of the MMWA to preclude final binding arbitration of statutory MMWA claims. The federal policy favoring arbitration and the Supreme Court's affirmation of the FAA's breadth lead this court to conclude that binding arbitration does not inherently conflict with the purpose of the MMWA.

### 2. *FTC Regulations and Chevron v. Natural Resources Defense Counsel*

A determination of congressional intent to preclude binding arbitration could include an additional inquiry beyond the *McMahon* test. "If ... the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue," the courts must examine the construction of the agency charged with administering the statute. *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). "If the intent of Congress is clear, that is the end of the matter. ... [This is so because] the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. As discussed in section 1 above, Congress' inconsistent use of multiple phrases and sparse legislative history lead this court to conclude that congressional intent to preclude final binding arbitration is unclear, thus ambiguous. The *Walton* court did not consider the impact of the FTC's interpretation. The panel noted that, because "the text, legislative history, and purpose of the MMWA do not evince a congressional intent to bar arbitration

---

[5] Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

of MMWA written warranty claims. … [t]he clear congressional intent in favor of enforcing valid arbitration agreements [found in the FAA] controls in this case." The Fifth Circuit was uninterested in the FTC's interpretation of the MMWA because agency interpretation of MMWA phrases could not show "clear congressional intent," only agency construction. Accordingly, the Fifth Circuit concluded its analysis. *Walton*, 298 F.3d at 478. Noting that no challenge was raised to the validity of the arbitration contract, the *Walton* court ordered binding arbitration.

Congress delegated its authority to interpret the MMWA to the FTC under 15 U.S.C § 2310(a)(2). The FTC has interpreted the MMWA to preclude binding arbitration of warranty disputes. *See, Davis*, 305 F.3d at 1278. Giving due *Chevron* deference to the FTC's interpretation, "[w]hen a court reviews an agency's construction of the statute which it administers … the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 842-43. A reasonable and therefore permissible FTC interpretation/construction could evince a congressional intent to preclude binding arbitration. Accordingly, this court must determine whether the FTC's interpretation of 15 U.S.C. § 2310 is reasonable.

### a. *FTC Construction Is Reasonable Because It Eliminates MMWA Textual Ambiguities*

The FTC's interpretation/construction of 15 U.S.C. § 2310(a)(2) broadly defines a mechanism "as an informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of Title I of the Act applies." 16 C.F.R. 703.1(e). In setting forth the minimum requirements of the mechanism, FTC regulations state that "[d]ecisions of the [m]echanism shall not be legally binding on any person." 16 C.F.R. 703.5(j). The FTC's definition of "mechanism" eliminates previously noted ambiguities and is therefore reasonable.

### b. *The FTC's Reasoning for Construing 15 U.S.C. 2310 to Preclude Binding Arbitration Is Reasonable and Permissible*

The FTC construed the MMWA as precluding binding arbitration based on its independent review of the statute, 64 Fed. Reg. 19700, 19708 (Apr. 22, 1999), and in reliance on a staff report of the House Interstate and Foreign Commerce Committee's Subcommittee on Commerce and Finance. These are valid sources from which the FTC may construe the MMWA.

i. FTC Construction Based on Independent Review of the MMWA and Legislative History

The *Davis* court felt compelled to examine the FTC's rationale for interpreting the MMWA to preclude binding arbitration. "In determining whether the FTC regulations are reasonable, we look to the rationale behind the FTC's construction." *Davis*, 306 F.3d at 1278. The *Davis* court first noted that 16 C.F.R. 700.8 referenced 15 U.S.C. § 2310(d)'s creation of civil jurisdiction in state and federal courts. From this, *Davis* concluded that the FTC's adoption of a position disfavoring binding arbitration was unreasonable because the FTC improperly based its construction of 15 U.S.C. § 2310 on the erroneous assumption that a statute's creation of a judicial forum indicated congressional intent to preclude binding arbitration. *Davis*, 306 F.3d at 1278-79. See *supra*, Section II.A.1.a.i.

The FTC has consistently stated that its decision to preclude binding arbitration was based on its independent review of the statute, 64 Fed. Reg. 19700, 19708 (Apr. 22, 1999), and reading of a now unobtainable staff report of the House Interstate and Foreign Commerce Committee's Subcommittee on Commerce and Finance. Though this document is now unavailable, the FTC's can reasonably base its construction of § 2310(a)(d) upon pieces of legislative history then available. *Walton*, 298 F.3d 470, 486-87 (5th Cir. 2002) (King, C.J., dissenting). Because the FTC based its interpretation in its independent analysis of the MMWA and upon a staff report from the subcommittee drafting the bill, this court finds that the FTC's rationale is reasonable.

ii. *FTC Construction of MMWA Is Not an Improper Reaction to Arbitration in General*

The *Davis* court also held that the FTC's adoption of a position disfavoring binding arbitration was due to the FTC's improper fear that arbitration could not adequately protect consumers. 40 Fed. Reg. 60167, 60210 (Dec. 31, 1975). Because the FTC's fears mirrored the concerns of the 1953 *Wilko* decision, a fear the Supreme Court declared unfounded, the *Davis* court concluded that the FTC's rationale for interpreting "mechanism" to preclude binding arbitration was contrary to current Supreme Court precedent and therefore unreasonable. *Davis*, 305 F.3d 1278, 1280 (11th Cir. 2002).

The FTC has stated that its policy is not based on a *Wilko*-styled fear about the adequacy of arbitration to protect consumers, but its own reading of the statute's plain meaning. 64 Fed. Reg. 19700, 19708 (Apr. 22, 1999); *See,*

*Walton*, 298 F.3d 470, 486-87 (5th Cir. 2002) (King, C.J., dissenting). This court is not persuaded, in light of the FTC declaration that improper *Wilko*-styled fear did not animate its construction of the MMWA, that the FTC's rationale for interpreting "mechanism" to preclude binding arbitration is unreasonable.

### c. *FTC Construction of the MMWA Is Reasonable and Permissible*

This court, however, concludes that the FTC's rationale for interpreting the MMWA to preclude binding arbitration is sound and the interpretations reasonable. Giving deference, as the court must, to a reasonable interpretation of a statute by an agency charged with interpreting the statute, *Chevron*, 467 U.S. at 842-43, this court now holds that 15 U.S.C. § 2310 of the Magnusson-Moss Warranty Act precludes a warrantor from including, and the court from enforcing, a final binding arbitration provision.

### III. *Count IV: Breach of Implied Warranty Under the MMWA*

Plaintiff Tucker asserts a cause of action for a breach of an implied warranty under the MMWA. As thoroughly considered above, this statutory claim is subject to the arbitration clause of the Buyer's Order unless the MMWA evinces congressional intent to preclude binding arbitration of an implied warranty claim. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). The provisions of the MMWA that establish a civil cause of action and a judicial forum are only applicable to disputes about written warranties. 15 U.S.C. § 2310. An implied warranty could not include either an "informal dispute settlement procedures" or an "informal dispute settlement mechanism," thus the FTC's interpretation of these phrases to preclude binding arbitration is inapplicable. The court can discern no congressional intent to preclude binding arbitration of implied warranty claims arising under the MMWA, thus, the FAA's standing presumption of arbitrability requires Plaintiff Tucker to arbitrate Count IV.

### *Conclusion*

Having made the bargain to arbitrate, Plaintiff Tucker must submit Counts I, II, IV, V, VI, VII, VIII, and IX to final binding arbitration pursuant to the arbitration provision of the Buyer' Order. Accordingly, Defendant Geneva's Motion to Stay Proceedings is granted as to Counts I, II, IV, V, VI,

VII, VIII, and IX. Because the MMWA precludes final binding arbitration of written warranty claims, the arbitration clause within the Buyer's Order is unenforceable as it relates to Count III, and this count continues.